IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CR-20-D
No. 5:15-CR-113-D
No. 5:18-CV-299-D

KORLIS RAY HARRIS,                )
                                  )
            Petitioner,           )
                                  )
      v.                          )     **ORDER**
                                  )
UNITED STATES OF AMERICA,         )
                                  )
            Respondent.           )

On June 25, 2018, pursuant to 28 U.S.C. § 2255, Korlis Ray Harris ("Harris" or "petitioner") moved to vacate, set aside, or correct his 150-month sentence [D.E. 112]. On October 1, 2018, the government moved to dismiss Harris's section 2255 motion [D.E. 116] and filed a memorandum in support [D.E. 117]. On December 6, 2018, Harris responded in opposition [D.E. 122]. On June 17, 2019, the court granted the government's motion to dismiss and dismissed Harris's section 2255 motion [D.E. 124]. Harris appealed [D.E. 128]. On July 29, 2020, the United States Court of Appeals for the Fourth Circuit dismissed and remanded Harris's appeal. See United States v. Harris, 813 F. App'x 909, 910 (4th Cir. 2020) (per curiam) (unpublished). In remanding, the Fourth Circuit held that this court had not addressed Harris's "claim that counsel was ineffective at sentencing for failing to investigate, and object to, the unreliability of the informant's statements, a tactic Harris contends resulted in a lower base offense level for his co-defendant." Id. As explained below, the court dismisses Harris's remaining claim.

I.

Pursuant to a plea agreement, Harris pleaded guilty to habitual impaired driving (count one in 5:14-CR-20-D) and to conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine (count one in 5:15-CR-113-D). See [D.E. 58, 59, 91, 102]; Rule 11 Hr'g Tr., United States v. Harris, No. 5:14-CR-20-D (E.D.N.C. 2017) [D.E. 61]. On October 26, 2016, at Harris's sentencing hearing, the court calculated Harris's total offense level to be 27, his criminal history category to be V, and his advisory guideline range to be 120 to 150 months' imprisonment. See Sentencing Tr. [D.E. 101] 7–8. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Harris to 30 months' imprisonment on count one in 5:14-CR-20-D, and 120 months' consecutive imprisonment on count one in 5:15-CR-113-D, for a total of 150 months' imprisonment. See id. at 28–32.

Harris appealed [D.E. 94]. On June 27, 2017, the Fourth Circuit affirmed this court's judgment. See United States v. Harris, 693 F. App'x 200, 200 (4th Cir. 2017) (per curiam) (unpublished).

On June 25, 2018, Harris filed his section 2255 motion [D.E. 112]. In his motion, Harris alleged ineffective assistance of counsel for failing to investigate the case and object to the unreliability of the informant's statements. See id. at 4–12. The court dismissed the claim to the extent that Harris challenged his guilty plea. See [D.E. 124]. Harris appealed [D.E. 128]. The Fourth Circuit held that this court failed to address Harris's challenge to counsel's performance at sentencing. See Harris, 813 F. App'x at 910.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests a claim's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63

2

(2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 320 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). The government may challenge the legal sufficiency of a section 2255 petition through a motion to dismiss under Rule 12(b)(6). See Rule 12, Rules Governing Section 2255 Proceedings; United States v. Frady, 456 U.S. 152, 166 n.15 (1982); United States v. Reckmeyer, 900 F.2d 257, 1900 WL 41044, at *4 (4th Cir. 1990) (unpublished table decision). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In reviewing a section 2255 motion, the court is not limited to the motion itself. The court also may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).

"The Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (quotations omitted). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including plea negotiations, trial, sentencing, and appeal. See, e.g., Missouri v. Frye, 566 U.S. 134, 140 (2012); Lafler v. Cooper, 566 U.S. 156, 164–65 (2012); Glover v. United States, 531 U.S. 198, 203–04 (2001). "[S]entencing is a critical stage of trial at which a defendant is entitled to effective assistance of counsel, and a sentence imposed without effective assistance

3

must be vacated and reimposed to permit facts in mitigation of punishment to be fully and freely developed." United States v. Breckenridge, 93 F.3d 132, 135 (4th Cir. 1996); see Glover, 531 U.S. at 203–04. To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment, Harris must show that his attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–91 (1984).

When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. A party also must show that counsel's deficient performance prejudiced the party. See id. at 691–96. A party does so by showing that there is a "reasonable probability" that, but for the deficiency, "the result of the proceeding would have been different." Id. at 694.

As for prejudice arising from alleged deficient performance at sentencing, a defendant must prove the existence of a reasonable probability that the defendant would have been sentenced differently if the error had not occurred. See Sears v. Upton, 561 U.S. 945, 956 (2010); United States v. Carthorne, 878 F.3d 458, 469–70 (4th Cir. 2017). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Where counsel's error resulted in an improper guideline calculation, the error "can, and most often will be sufficient" to satisfy the defendant's burden as to prejudice. Molina-Martinez v. United States, 136 S. Ct. 1338, 1345 (2016); see United States v. Feldman, 793 F. App'x 170, 173–74 (4th Cir. 2019) (per curiam) (unpublished); Carthorne, 878 F.3d at 469–70. However, if the district court announces a substantively reasonable alternative, variant sentence independent of the advisory guideline

4

calculation, there is no prejudice. See, e.g., Molina-Martinez, 136 S. Ct. at 1346–47; Feldman, 793 F. App'x at 173–74.

"[A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Strickland, 466 U.S. at 695. When analyzing an ineffectiveness claim, a court may rely on its own familiarity with the case. See Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977); United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013).

As for Harris's remaining ineffective assistance claim, Harris contends that his counsel provided deficient performance in failing to investigate and object to the drug weight at sentencing. See [D.E. 112-1] 4–8; [D.E. 122] 2–6. In support, Harris cites the drug weight that the court adopted in co-defendant Eirece Whitehead's case and argues that the court adopted that drug weight because it found Roberto Lopez-Gomez (the confidential informant and defendant in case number 5:14-CR-234-FL-1) not credible and that the "law of the case" required this court to adopt the same drug weight in Harris's case. See [D.E. 112-1] 4–8; [D.E. 122] 2–6.

The premise of Harris's argument is wrong. This court did not adopt a different drug weight in Whitehead's case based on Lopez-Gomez's alleged lack of credibility. See [D.E. 112-1] 4–8; [D.E. 122] 2–6. Rather, Whitehead signed a plea agreement before Harris did. See Plea Agreement, United States v. Whitehead, No. 5:15-CR-133-D-2 (E.D.N.C. 2016) [D.E. 62]. In Whitehead's plea agreement, the parties stipulated that the "relevant and readily provable quantity of cocaine to be used in determination of the base offense level pursuant to U.S.S.G. § 2D1.1 is at least 500 grams but not more than 2 [k]ilograms, which results in a presumptive base offense level 24." Id. ¶ 5(a); see Fed. R. Crim. P. 11(c)(1)(B). At Whitehead's sentencing hearing, the court "sustain[ed] the objection in light of the stipulation." Sentencing Tr. at 5, Whitehead, No. 5:15-CR-133-D-2

5

(E.D.N.C. 2016) [D.E. 121]. The court did not sustain the objection because it found Lopez-Gomez not credible. See id.

As for Lopez-Gomez's credibility, Lopez-Gomez participated as the confidential informant in the buy-bust of Harris and Whitehead on June 6, 2014. See PSR [D.E. 85] ¶¶ 14–15. Harris (not Whitehead) contacted Lopez-Gomez to arrange the purchase of 623.7 grams of cocaine for $23,000. See id.; Sentencing Tr. [D.E. 101] 22. Moreover, the stipulation in Whitehead's plea agreement about drug weight was understandable given that on June 6, 2014, Lopez-Gomez spoke to law enforcement in a debriefing and said that Harris (not Harris and Whitehead) purchased at least one-half kilogram of cocaine from him every two weeks for the past three or four months. See Sentencing Mem. at 4, Whitehead, No. 5:15-CR-113-D-2 (E.D.N.C. 2016) [D.E. 75]. Law enforcement then used Lopez-Gomez for the buy-bust of June 6, 2014. Thus, the drug weight in Harris's PSR comported with Lopez-Gomez's first debrief. See PSR ¶ 17. Only in a 2015 debrief did Lopez-Gomez put the additional three kilograms of cocaine on Whitehead. See Sentencing Mem. at 4–5, Whitehead, 5:15-CR-113-D-2 (E.D.N.C. 2016) [D.E. 75].

As for the performance of Harris's defense counsel concerning drug weight, the "reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." Strickland, 466 U.S. at 691. "Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." Id. Harris's defense counsel did not object to the three additional kilograms of cocaine because she knew that this court, at Whitehead's sentencing, had not rejected Lopez-Gomez's June 6, 2014 contention that Harris had purchased at least one-half kilogram of cocaine from Lopez-Gomez every two weeks for the past three or four months. Rather, she knew that Lopez-Gomez had said he interacted with Harris, not Harris and Whitehead, and that Harris had

6

purchased at least one-half kilogram of cocaine from him every two weeks for the past three or four months. See Sentencing Tr. [D.E. 101] 22. Accordingly, as a tactical matter, Harris's defense counsel did not object to the drug weight attributed to Harris in the PSR. Instead, Harris's defense counsel argued that the court should reduce the offense level in Harris's drug case by four levels to account for the stipulation that Whitehead received in his plea agreement in order to avoid an unwarranted sentencing disparity between Harris and Whitehead. See id. at 11–12. This court rejected defense counsel's argument because the sentencing disparity was warranted. See id. at 16–18, 28–34. Defense counsel's tactical approach in how to address drug weight, however, falls well within "the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

As for Harris's reference to the "law of the case," that doctrine does not apply in this case. The Supreme Court has described the "law of the case" as an "amorphous concept." Pepper v. United States, 562 U.S. 476, 506 (2011) (quotations omitted). "[M]ost commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Id. (quotation omitted). Here, the court did not decide upon a rule of law applicable to both Harris and Whitehead. Rather, the court drew a factual distinction between the drug weight for which Harris was responsible and the drug weight for which Whitehead was responsible. Thus, Harris's sentencing claim fails as to deficient performance.

Alternatively, Harris's claim fails as to prejudice. At Harris's sentencing hearing, the court thoroughly considered defense counsel's arguments about the section 3553(a) factors before imposing a 150-month sentence. See Sentencing Tr. [D.E. 101] 8–32. Notably, Harris pleaded guilty to serious crimes in two different cases. In the first case, Harris pleaded guilty to habitual

7

impaired driving. In the second case, Harris pleaded guilty to conspiracy to distribute and possess with the intent to distribute 500 grams or more of cocaine.

As for the first case, on January 20, 2013, Harris drove to an access control gate on Fort Bragg, North Carolina. See PSR ¶ 12. Harris had a handgun on the vehicle's front seat. The MP ordered Harris out of his vehicle, and Harris emerged holding a bottle of Gray Goose vodka. Harris promptly failed field sobriety tests and took a preliminary breath test yielding a .19 blood alcohol content. See id. Harris then became belligerent and uncooperative, and the MPs detained him. See id. A search of Harris's car yielded a second handgun. See id.

Sadly, driving while intoxicated is nothing new for Harris. When Harris drove drunk and armed with two guns on January 20, 2013, Harris already had five driving while impaired convictions. See id. ¶¶ 26, 29–32. Harris sustained those convictions in 2007, 2008, 2011 (twice), and 2012. See id. The North Carolina judicial system imposed progressively more serious punishments on Harris, but Harris continued to drive while drunk. See id. In fact, Harris's fifth DWI conviction resulted in a two-year prison sentence, and Harris was released on November 9, 2012. See id. ¶ 32. Harris then drove drunk on January 20, 2013, resulting in his federal conviction.

Incredibly, Harris did not stop his criminal behavior after his arrest on January 20, 2013. Rather, Harris bonded out and escalated his criminal behavior by engaging in serious cocaine trafficking. See id. ¶¶ 14–17. In 2014, law enforcement used a confidential informant (Lopez-Gomez) to arrange to sell 623.7 grams of cocaine to Harris and Whitehead in exchange for $23,000. See id. On June 6, 2014, Harris contacted Lopez-Gomez about buying cocaine. See Sentencing Tr. [D.E. 101] 22. On that same date, Lopez-Gomez met with Harris and Whitehead at a local restaurant. See PSR ¶¶ 15. Lopez-Gomez got into Harris's car. See id. Harris showed Lopez-Gomez the cash to purchase the cocaine. See id. Law enforcement then attempted to arrest Harris

8

and Whitehead, but Whitehead rammed a Rocky Mount Police Department vehicle before being captured. See id. A search of Harris's car yielded $26,023 in cash and a .40 caliber pistol. See id.

In considering Harris's sentence, Harris's defense counsel noted that his co-defendant Whitehead had negotiated a favorable plea agreement before Harris, that Whitehead's plea agreement included a favorable stipulation as to drug weight, and that Whitehead agreed to cooperate against Harris. See Sentencing Tr. [D.E. 101] 11. Harris's defense counsel then asked for a four-level downward departure as to drug weight in order to avoid an unwarranted sentencing disparity for Harris when compared to the drug sentence of Whitehead. See id. at 11–12.

In response, this court noted that Harris was a criminal history category V, had five prior DWIs, and was on pretrial release for his sixth DWI when he engaged in serious cocaine trafficking in 2014. See id. at 15–16. In contrast, Whitehead was a criminal history category I, signed his plea agreement first, and cooperated. In this court's view, those factors distinguished Harris from Whitehead. See id. at 15–17. The difference in drug weight between Harris's PSR and Whitehead's PSR did not affect Harris's sentence. See id. at 17–32.

In imposing the sentence, this court noted the extremely serious nature of Harris's offense conduct of January 20, 2013, and Harris's serious cocaine trafficking in 2014 while on pretrial release for his sixth DUI. See id. at 28–30. The court also stressed the need to incapacitate Harris to protect society from Harris. See id. at 30–32. The court found that Harris was not similarly situated with Whitehead, particularly in terms of their criminal history categories. See id. at 32. Moreover, in announcing Harris's sentence, the court expressly stated that if it had incorrectly calculated the advisory guideline range, it would still have imposed the 150-month sentence in Harris's two cases. See id. at 34; United States v. Gomez-Jimenez, 750 F.3d 370, 382–86 (4th Cir. 2014); United States v. Hargrove, 701 F.3d 156, 160–65 (4th Cir. 2012). In light of this court's

9

alternative, variant sentence, regardless of the court's ruling concerning the drug weight, Harris would have received the same sentence. See Sentencing Tr. [D.E. 101] 34. Thus, even if there was deficient performance concerning the drug weight, there was no prejudice. See, e.g., Molina-Martinez, 136 S. Ct. at 1346–47; Feldman, 793 F. App'x at 173–74.

After reviewing the claims presented in Harris's motion, the court finds that reasonable jurists would not find the court's treatment of Harris's claims debatable or wrong or that the claims deserve encouragement to proceed any further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

II.

In sum, the court GRANTS respondent's motion to dismiss [D.E. 116], DISMISSES petitioner's section 2255 motion [D.E. 112], and DENIES a certificate of appealability.

SO ORDERED. This 27 day of April 2021.

JAMES C. DEVER III
United States District Judge

10
Case 5:15-cr-00113-D   Document 138   Filed 04/27/21   Page 10 of 10